## Quinn Estate

Before Klein, Adm. J., Lefever, Saylor, Shoyer, Silverstein & Pawelec, JJ.

SILVERSTEIN, J., December 8, 1971.—By decree dated July 15, 1971, pursuant to petition filed by Manuel Kaufman, Deputy Welfare Commissioner of the City of Philadelphia, a citation issued directed to Kathryn M. Quinn to show cause why she should not be adjudged an incompetent and a guardian of her estate appointed. At the hearing on August 19, 1971, Francis I. Farley, Esquire, appeared on behalf of Kathryn M. Quinn. Kathryn M. Quinn was not present although Mr. Farley advised the court that he had written Miss Quinn two letters advising her to be present.

Sara Downey, a social worker in the Adult Services Department of Public Welfare, testified that she has visited Miss Quinn, who is 56 years old, once a week since February 1971. That from her observation, there was no heat in the house. The interior of the house is in poor condition. Miss Quinn keeps two dogs and two cats whose leavings cover the floors. Apparently, Miss Quinn makes no attempt to clean up the house. There are roaches and flies in abundance in the house. The plumbing is not operative and Miss Quinn uses a drain in the backyard as a toilet. Trash accumulates in the house and yard. An abatement crew from License and

Inspection spent two days cleaning out the house and yard but trash is accumulating again.

Miss Quinn receives a welfare check of $101.60 each month. Frequently, Miss Quinn denies that the check has arrived. Miss Downey has been in touch with the Philadelphia Electric Company which has threatened to terminate service for nonpayment of its bills. The gas company has also threatened to terminate service and advises Miss Downey that Miss Quinn refuses entrance to their meter reader. There are outstanding bills from the telephone, gas and electric companies, as well as Graduate Hospital ($29.00), Wanamaker's ($330.72), water and sewer taxes ($37.28) and real estate taxes ($168.35). Miss Downey testified that from her observation Miss Quinn is incapable of making decisions concerning her day-to-day life. Sometimes she is lucid and at other times she has told Miss Downey that she feels she is living in a nightmare.

Miss Downey stated she had explained the nature of the guardianship proceedings to Miss Quinn, who had only laughed. It was Miss Downey's opinion that Miss Quinn did not understand the nature of the proceedings.

Mrs. John Lannutti, a niece of the alleged incompetent, confirmed Miss Downey's testimony concerning the conditions in which Miss Quinn is living. She stated that when she had visited the house years past, it was always neat and clean. She had not been to the house for two years before her visit in March 1971. That in the intervening period Kathryn Quinn's physical condition had deteriorated markedly.

Dr. Alfred Duncan, a psychiatrist with the Mental Health and Retardation Unit of the City of Philadelphia, testified that he examined Kathryn Quinn at the request of Miss Downey on April 28, 1971. He found no organic deficit and found her general health to be

unremarkable. He did, however, reach a diagnosis of residual schizophrenia. He stated that ". . . as one of the characteristics of residual schizophrenia, the likelihood of her being inclined to manage affairs to any degree is small." Dr. Duncan stated that the prognosis was that Miss Quinn's condition was likely to remain static. That she might improve if she would attend a mental health center and take medication, but she refused to do so.

The hearing was adjourned at the request of Mr. Farley to August 26, 1971. At the continued hearing, Mr. Farley stated that he had again contacted Miss Quinn for the purpose of securing her attendance at the hearing. Once again Miss Quinn was not present at the hearing. Mr. Farley then moved to dismiss the petition.

In considering the evidence and the motion to dismiss, I am aware that the Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, 50 PS §3101, et seq., which empowers a court to declare a person mentally incompetent and to place such individual's business affairs in the hands of another for management is "a dangerous statute easily capable of abuse": Hoffman's Estate, 209 Pa. 357.

The Incompetents' Estates Act, as amended, provides under "Definitions": "(3) 'Incompetent' means a person who, because of mental infirmities of old age, mental illness, mental deficiency, drug addiction or inebriety, is unable to manage his property, or is liable to dissipate it or become the victim of designing persons": 50 PS §3102.

The standard of proof in incompetency proceedings has been repeatedly set forth by the Supreme Court: "Mental capacity and competency are to be presumed and before any person shall be deprived of the right to handle his or her own property and manage his or her

own affairs there must be *clear* and *convincing* proof of mental incompetency and such proof must be *preponderating"*: Myers Estate, 395 Pa. 459, 462 (1959) (Court's emphasis.)

I am satisfied from the testimony that Kathryn Quinn is incompetent as defined in the act. The failure of Kathryn Quinn to attend either of the hearings after she had been requested by her counsel to do so, serves to confirm Dr. Duncan's diagnosis of residual schizophrenia. The uncontradicted testimony of the wretched conditions in which the alleged incompetent apparently willingly lives and of her personal habits is clear evidence of her inability to manage her own affairs.

For the above reasons, I enter the attached decree.

## SUR EXCEPTIONS TO DECREE

KLEIN, Adm. J., March 13, 1972.—It is crystal clear that Kathryn Quinn is an elderly woman, suffering from schizophrenia, who without supervision might soon die of malnutrition and neglect. Judge Silverstein, after a most careful study of the matter, wrote a comprehensive adjudication, in which he reviewed the factual situations and the applicable law and adjudged the respondent incompetent and appointed John L. Steward, Director of the Adult Services Division of the Department of Public Welfare of the City of Philadelphia, guardian of her estate.

Judge Silverstein's order was obviously correct and serves the best interests of this unfortunate woman. Accordingly, we enter the following

## DECREE

And now, March 13, 1972, the exceptions are dismissed and the final decree entered by Silverstein, J., on October 26, 1971, adjudging Kathryn Quinn incompetent and appointing a guardian for her estate, is confirmed.